IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

MICHAEL ROCK,

        Plaintiff,

   v.                                    Civil Action No.
                                              8:14-CV-0212 (DEP)

CAROLYN W. COLVIN, Commissioner
  of Social Security,

        Defendant.

---

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF

SCHNEIDER LAW FIRM          MARK A. SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, New York 12901

FOR DEFENDANT

HON. RICHARD S. HARTUNIAN    JOSHUA L. KERSHNER, ESQ.
United States Attorney           Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on November 8, 2013, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003. Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated: November 11, 2014
Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
MICHAEL ROCK,


vs.                                              14-CV-212

COMMISSIONER OF SOCIAL SECURITY.
-----------------------------------------------------x
```

Transcript of *DECISION* held on November 7, 2014, at the James Hanley U.S. Courthouse, 100 South Clinton Street, Syracuse, New York, the HONORABLE DAVID E. PEEBLES, Presiding.


A P P E A R A N C E S

| | |
|---|---|
| For Plaintiff:<br>(Via Telephone) | MARK A. SCHNEIDER, ESQ.<br>57 Court Street<br>Plattsburgh, New York 12901 |
| For Defendant:<br>(Via Telephone) | SOCIAL SECURITY ADMINISTRATION<br>Office of Regional General Counsel<br>Region II<br>26 Federal Plaza - Room 3904<br>New York, New York 10278<br>  BY: JOSHUA L. KERSHNER, ESQ. |

1     (In chambers, via telephone:)
2     THE COURT: I have before me a request for judicial
3  review pursuant to 42, United States Code, Section 405(g) of
4  an adverse determination of the Commissioner.
5     The plaintiff's background is as follows: He was
6  born in February 1990. He is currently 24 years of age. If
7  my math serves me correctly, he was 22 years old at the time
8  of the hearing in this matter. At the time of the hearing,
9  he was married with two children ages five and one. There is
10 some conflict in the record as to where he lives. At the
11 hearing he testified he lives with his grandparents. That's
12 at Page 48 of the administrative transcript. He told
13 Dr. Liotta that he lives with his wife's parents. That's at
14 Page 608 of the administrative transcript.
15    He has a tenth grade education. While in school he
16 was in special education classes with the notation of a
17 previous diagnosis of attention disorder, hyperactivity
18 disorder or ADHD. He did not achieve a GED degree.
19    He last worked in or about June of 2010. His prior
20 work includes packing plastic bottles, remodeling, roofing,
21 delivering water and being involved in Christmas tree sales
22 and working at a fast food restaurant.
23    He suffers from many issues including anxiety. He
24 has complained over time of pinched nerves in his neck and
25 shoulders causing pain, stomach bulge, decreased vision,

right knee and right ankle pain, a bad heart, daily headaches, dizziness and vertigo.

Procedurally, he applied on September 30th, 2010, for supplemental security income or SSI benefits alleging an onset date of June 1, 2010. A hearing was conducted by Administrative Law Judge Robert Wright on May 4, 2012. ALJ Wright issued a decision on June 14, 2012. The Social Security Administration Appeals Council denied review of the decision on May 11, 2013, making the ALJ's decision a final determination of the agency.

In his decision, ALJ Wright concluded that plaintiff had not engaged in substantial gainful activity since his alleged onset date, that he had severe impairments at Step 2, including mild to moderate amount of denervation potentials in left C5 distribution, as well as anxiety and a history of ADHD.

The ALJ concluded, however, that the plaintiff did not meet or medically equal any of the listings. He considered, specifically, Listings 12.02, 12.04 and 12.06. He specifically found in connection with the B criteria associated with 12.06, that the plaintiff suffered from only mild limitations in the activity of daily living; moderate in social functioning; and moderate limitation in concentration, persistence and pace.

He next concluded that, despite his conditions,

plaintiff retains the residual functional capacity, or RFC, to perform light work, except he can perform simple and routine work with a specific vocational preparation of one or two and only occasional decision-making, changes in work setting and interaction with others.

The ALJ then went on to find that plaintiff is incapable of performing his past relevant work and applied the grids as a framework, noted that Rule 202.17 of the grids would indicate a no disability finding. However, finding that the job base on which the grids were predicated was sufficiently eroded by non-exertional limitations experienced, elicited testimony from a vocational expert who concluded that there were jobs in the national and regional economy that plaintiff was capable of performing.

My review is limited. I am tasked with determining whether the ALJ applied proper legal principles and his determination is supported by substantial evidence. The term "substantial evidence" being defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

The first issue raised is whether plaintiff meets or medically equals any of the listings, particularly listings 12.06 applicable to anxiety disorders or 12.07 related to somatoform disorders. In both of those cases, the plaintiff must meet the B listings, meaning he must

5
Rock v. Comm. of Social Security - 14-CV-212

1   demonstrate his burden of proof that he suffers from marked
2   limitations in two of the three categories or, obviously,
3   repeated episodes of decompensation, which is not at issue in
4   this case, or an extreme limitation of one.
5        There doesn't seem to be any indication that there
6   is an extreme limitation, which is an impairment that
7   interferes very seriously with the claimant's ability to
8   independently initiate, sustain or complete activities.  A
9   marked limitation is defined in the regulations as one which
10  impairs seriously with the claimant's ability to
11  independently initiate, sustain or complete activities.  It
12  is noted that a marked limitation may arise when several
13  activities or functions are impaired or even when only one is
14  impaired, as long as the degree of limitation is such as to
15  interfere seriously with the ability to function based on age
16  appropriate expectations, independently, appropriately,
17  effectively and on a sustained basis.
18        I find that the ALJ's determination regarding the B
19  criteria is supported by substantial evidence.  Very clearly,
20  the ALJ misspoke when he concluded that Dr. Liotta had ruled
21  out somatoform disorder.  Nonetheless, I find that that's a
22  harmless error because somatoform disorder, which has never
23  been diagnosed by any treating source, to meet or equal 12.07
24  requires meeting the B criteria, which the ALJ concluded that
25  he did not when he considered 12.06.

1         The only evidence that would even suggest a marked
2    limitation is the GAF score of 42.  Dr. Marks concluded that
3    plaintiff at 412 has a moderate limitation in concentration,
4    persistence and pace, moderate limitation in social
5    functioning and a mild limitation in daily activities --
6    daily living.  These determinations are supported by
7    Dr. Hartman's conclusions and Dr. Liotta.
8         I reviewed Mr. Schneider's case citations that deal
9    with differences of opinions between Dr. Liotta and
10   Dr. Hartman.  There apparently are several of those cases.
11   But this case appears to be very different because, with the
12   exception of the GAF 42 score, I read -- and the
13   commissioner, the ALJ, read -- Dr. Liotta's report is
14   basically consistent with or not markedly inconsistent with
15   the conclusions of Dr. Hartman.  So, I would say that because
16   he did not meet the B criteria, that finding is supported by
17   substantial evidence.  That issue does not warrant reversal.
18        Clearly, as Mr. Schneider correctly states, the ALJ
19   was required to consider the combination of plaintiff's
20   physical and mental conditions -- and there are clearly
21   several -- but the ALJ's decision, in my view, did consider
22   the totality and his RFC determination is well-supported.
23   The vocational expert testified at Step 5 pursuant to a
24   hypothetical that replicated the RFC finding which I find is
25   supported by substantial evidence and concluded no

1　disability.

2　　　　I reviewed carefully the records to determine
3　whether there was any cognitive deficit.  Clearly, there was
4　a reference in Dr. Hartman's, I believe, report to rule out
5　borderline intellectual functioning but there's no medical
6　evidence to suggest that he suffers from borderline
7　intellectual functioning.  It was never alleged and
8　Dr. Marks, I will note, did review the school records that
9　were relied on to support a claim of learning disability and
10　borderline intellectual functioning.  I'll also note that
11　Mr. Liotta made no diagnosis of learning disability.  He made
12　no Axis II diagnosis in his report.

13　　　　In terms of credibility, that is a matter reserved
14　to the administrative law judge, provided that he considers
15　the relevant factors and explains his decision, which I find
16　that he did.  He noted several issues with regard to
17　plaintiff's credibility:  His overblown claim concerning his
18　vision impairment; his inconsistent statements about the
19　frequency of playing video games; his inconsistency in
20　stating that he is unable to sit when, in fact, his
21　disability report made no indication in that regard.  It was
22　for the ALJ to weigh credibility and I find that his
23　explanation is adequate and supported.

24　　　　I've already spoken about Dr. Liotta versus
25　Dr. Hartman.  The GAF, I agree with the Commissioner and the

1 Commissioner's argument. GAF is of limited value. Certainly
2 a person with a GAF score of 42 experiences serious symptoms
3 such as suicidal ideation, severe obsession, rituals and
4 frequent shoplifting, and any serious impairment in social
5 occupational or school functioning, such as lack of friends
6 or an inability to maintain employment.
7 But Dr. Liotta's GAF score is based exclusively on
8 plaintiff's own statements and is a single determination
9 based on only one examination. The ALJ was certainly
10 obligated to address that and he did and I don't have any
11 quarrel with his ability to discount that in light of the
12 overall record.
13 In terms of reliance on lack of treatment, that
14 seems to be a fairly minor point and, as I indicated
15 previously, I think it is a relevant consideration, as long
16 as it isn't the sole basis for the determination. The
17 section cited, 20 CFR Section 416.930 seems to relate to a
18 situation where there is a disability. There's a clear
19 indication that a prescribed treatment could ameliorate or
20 eliminate the disability and the plaintiff fails to follow
21 that treatment. We don't really have that situation here.
22 So, for all of those reasons, I find that the
23 Commissioner's determination is supported by substantial
24 evidence and resulted from proper legal principles being
25 applied. I will, therefore, grant defendant's motion for

Rock v. Comm. of Social Security - 14-CV-212

1  judgment on the pleadings.
2  　　　I appreciate excellent submissions.  This was an
3  interesting and difficult case, frankly.  Thank you both.
4  　　　MR. SCHNEIDER:  Thank you.
5  　　　(Proceedings were adjourned.)

C E R T I F I C A T I O N

        I, DIANE S. MARTENS, Registered Professional Reporter, DO HEREBY CERTIFY that I attended the foregoing proceedings, took stenographic notes of the same, that the foregoing is a true and correct copy of same and the whole thereof.

*Diane Martens*
_____
DIANE S. MARTENS, FCRR